Our next case today is Sunshine State Regional Center, Inc. v. Director, US Citizenship and Immigration Services and we'll give just a couple of minutes to allow the courtroom to settle. All right, council whenever you're ready. Good morning, your honors and may it please the court. My name is Brad Bannas I represent the appellant sunshine state in this case, I'm sorry to interrupt but can I ask you to just speak to the microphone a little bit more please. That way we can make sure it's getting picked up and recorded. Yes, your honor I apologize I don't often get accused of being too quiet, no worries. Thank you. In 2022, Congress passed a new law reforming what we call the EB-5 program. One of its provisions sought to create a new annual fee. Congress used particular language to identify who should be paying that annual fee going forward and use this phrase each regional center designated under subparagraph E. That's subparagraph E of the 2022 law. USCIS then interpreted that to apply to regional centers that were designated under a 1992 law. They are not required to get re-designated and there's no dispute that Sunshine State was designated in 2014 and remain designated after this law passed. It's been designated the entire time. As such, the plain text and the structure. I thought the earlier one was repealed though. Your honor, in the RIA it did indicate it was repealed, however, the agency fought this issue out in San Francisco. They were enjoined by a case called the Baring case where a judge out there said repeal doesn't mean repeal. It means that the program remained authorized and that it did not de-designate regional centers that were designated under the prior law. The agency lost that. They're enjoined from arguing otherwise and they have acquiesced in that. That's two and a half years ago now. Wasn't there a settlement of that? That's right, your honor. And Judge Chabria out in San Francisco begged the agency to engage in rulemaking, notice and comment rulemaking to clarify all these issues, to give the regulated parties notice. And if they had done that in the last two and a half years, this would be a totally different case, your honor. But they haven't. Instead, they're relying on a notice in the federal register that they claim applies the plain language of the statute. We don't necessarily have to agree with the Baring court's interpretation of the statute, do we? I do not. I think the government concedes and they have to because they're enjoined from arguing otherwise. But the government can concede all it wants to, but I'm not saying that we necessarily do. But if we think that the correct interpretation of the law is something different than both of you think it is, then aren't we obligated to provide the law with what we think is the correct legal interpretation? Your honor, I do. And I think the appellant has the correct legal legal interpretation. And that interpretation is this, is that when Congress reauthorized the program, which had done almost 30 times before, and we have this on page six of our brief, six and seven, this long string site, this was a common thing in 1992, when Congress created the regional center program, it put a sunset deadline. And there were lapses throughout 1992 to 2022. And every time Congress has extended that deadline, no one considered the program repealed. No one considered the program or the regional centers are designated, undesignated or de-designated. And so I think it's completely consistent with congressional intent to read the new law to do that very same thing. Let me ask you, I mean, so to channel my deeply recessive pragmatist, why, why would Congress do this? Why would Congress say only the new guys have to pay this fee and not the old guys? I don't think I understand that. And to build on that, if you don't mind, especially given that the whole reason why the fee was created was because of the fraud that the older ones who were already in existence were doing. And so to create sort of like an inspector general to ensure that doesn't happen, it doesn't really make a lot of intuitive sense, at least to me, as to why you would put the cost of that on new ones going forward, but not on existing ones that continue to exist that might've been the reason, maybe not yours in particular, but in mass for imposing the fee in the first place. So three points. First, legacy regional centers, I'll just use that term for people designated under the prior law, comply with all of the same provisions just through different mechanisms. The regulation that was passed in the nineties is still enforced today and it's still applied to legacy regional centers. If you look at the chart we provided in the reply brief. We're not supposed to pay the fee, right? I mean, that's the point of this case is that you don't want to pay the fee. Your honor, we don't think the fee is required of legacy regional centers. However, all of the fraud concerns we have, we don't want there to be fraud in the program either. I understand. But just to get to the point that judge Rosenbaum and I are asking you, why? Why would Congress have a program where only the new guys have to pay? I just don't think I understand that. Well, you'll need to talk to Congress about that, your honor. Just so I'm clear though, there isn't a reason. It's just, which is fine. You know, it's fine if sort of your answer is the statute says what it says and come hell or high water, you know, like the chips fall where they may. That's fine. That's a fine answer. But there there isn't so far as you're aware, a good reason that Congress would have done it this way. I would say there's I think the parties agree there's no real legislative history about these provisions. And so we're left with the text. And I think it's completely right. But I think the thrust of the question is you couldn't imagine a rational basis for why they would do it that way. Can you? I absolutely can, your honor. They would treat previously designated regional centers different than the new guys. There's no just fill in that blank because because they have a history, they have a track record. They're already paying. But the history and track record is that they've been involved in fraud and abuse, which has led to the design of the new statute. Your honor. I yes. In mass, not yours in particular. I appreciate that distinction, your honor. And what Congress chose to do to remedy that is, if you want, so let me make this clear. If my client wants to engage in a new commercial enterprise to solicit new investors under the new law, they have to comply with all of this. They don't have to pay the fee, but they have to file and they have to satisfy the strictures of 1153 B five F and H. But so and I'm sorry, I don't want to I'm just this is the last time I'm going to ask it, but it doesn't make sense to me why, if the reason that the fee was imposed is to pay for the investigation and prevention of these abuses among among these RIAs. Why you wouldn't want to do it with respect to all of them instead of especially the ones that were the reason that you set it up in the first place, as opposed to just the ones going forward. Like, why, why wouldn't you use that? I assume Inspector General is going to also investigate the existing RIAs. So why wouldn't the existing RIAs have to continue to go forward, have to pay to help defray the cost of that? So they do help pay the cost, just not under this particular fee. The agency raised fees two and three hundred percent. But is there a way that they pay it, that new RIAs do not pay it? I don't think I understand your question, I'm sorry. Well, you're suggesting that they pay the they pay their fair share. And so what I'm asking you is that suggests to me that they pay the same amount as the new the newly designated RIAs. And so I'm that's news to me if that's the case, but I could have missed something. I think it's a completely rational policy decision for Congress to put this fee on the back of new regional centers who seek the benefit of the new law, not legacy regional centers who are dormant. OK, that's a different answer. So the answer is that your argument is that they should pay less in total fees than new RIAs. Correct. OK, that's correct. I wanted to make sure I help me with the text. What is there in this text that suggests Congress intended to treat regional centers differently depending on whether they fell in the old category or the new category? I can't find anything in the text that says Congress meant to do it in any definitional section. Help me with the text and show me what there is in this text that would enable me to find that Congress meant to treat regional centers differently depending on the temporal issue of when they were established. Your Honor, the immediate text says each regional center designated under subparagraph E. My client is not designated under subparagraph E. They were designated under the prior law. Does that argument assume that designation is like this term of art that refers to the genesis of a particular center's creation? I mean, couldn't designated likewise just mean recognized, approved? I think it is a term of art, and it was a term of art since 1992. And if you look at subsection E of 1153b5, if you look at subsection I, that's this provision that authorizes the program. Then if you look at subsection III, that's the provision that you have to satisfy to be designated. My client is authorized to operate under subsection I. This is where I'd like you to help me. The language in subparagraph I refers to a regional center, quote, which has been designated. That's 1153b5EI. It looks to me like this language does not refer to when a regional center was designated, only that it, quote, has been designated. That's correct, Your Honor. It authorizes the program for both people designated under the prior program and under the new program. Subsection I authorizes the program. It doesn't do anything to designate. It can't reference designated regional centers and all. How then does this reference here suggest Congress bent to create two separate classes of regional centers and impose this obligation to pay into the fund for one but not the other? Yes, Your Honor, I see my time is over on my hand. Thank you. So, this is a great example of where Congress is using disparate terms to mean disparate things. This references all designated regional centers under the prior law, under the new law. The provision I talk about, Congress specifically says only the regional centers designated under subparagraph E of this law. And so, we also see terms like any regional center, a regional center. These all have different meanings, and if we interpret them all to mean the same thing, we violate the canon of surplusage. We violate all sorts of basic canons of interpretation, and I think that's the hard part of this case is Your Honors point out, this policy seems crazy, but the language of the statute is clear and the text and structure distinguish between legacy regional centers and new regional centers, and that's why we think you should rule in our favor. Thank you, Your Honors. All right. Thank you, Counsel. You've reserved five minutes. We'll hear next from the U.S. Citizenship and Immigration Services. Good morning, Your Honors. May it please the court. My name is Alessandra Faso, and I represent the government in this matter. This court should affirm district court's decision dismissing Sunshine State's complaint because the government's interpretation of the Reform and Integrity Act's integrity fund fee as applicable to all regional centers, regardless of their time of designation, is correct. Sunshine State has attempted to circumvent their obligations under the new Reform and Integrity Act as clearly delineated by Congress by way of a court order. And as you just heard, Sunshine State still wishes to participate in this newly reformed and reenacted program by Congress, but doesn't believe it should be subject to the integrity fund fee that funds the very integrity provisions that Congress enacted. USCIS's interpretation and reading of the integrity fund fee provision as applicable to all regional centers is the best interpretation of the statute. So let me ask you a question, though. I mean, counsel on the other side of the aisle says, look, you know, the statute refers sometimes to designated under subparagraph E, and sometimes it speaks more generally when it's talking about the regional centers. And so if Sunshine State's interpretation is wrong, do you have an alternative explanation for why the RIA sometimes uses that more specific phrase? So the disparate terms used throughout the Reform and Integrity Act, while on their face, we understand that Congress uses all regional centers, A regional centers, regional centers designated under subparagraph E. But if we look at the text as a whole, and we look at the purpose of the act and Congress's reasoning behind all of these reforms, it's clear that despite those, you know, provisions that might have different, you know, ways of referring to the regional centers, they all refer to regional centers that are authorized to participate in the regional center program as reauthorized by the Reform and Integrity Act. So you're just saying it's sort of loose drafting? Unfortunately, yes, Your Honor. And so to go back to Judge Newsom's commentary about, you know, why and why would it make sense for Congress to enact this new program, but exempt all of the purported abusers of the program from paying the fee? To put it in perspective, as of this morning, there are 438 active previously approved regional centers that predated the Reform and Integrity Act. So all of those regional centers are similar to Sunshine State in that they were, they obtained designation prior to the Reform and Integrity Act. 130 regional centers that are active today were enacted after, were obtained designation after the Reform and Integrity Act was passed. And presumably at the time, immediately after the RIA was passed, there were 438 or more existing ones and zero new ones.  And so to put that in perspective, we're putting the responsibility for paying into this critical fund on the backs of about a third of those regional centers that have obtained designation after the Reform and Integrity Act was passed. And so that doesn't make sense that only a third of regional centers should be responsible for funding a fee that covers every single regional center that is authorized to participate in the program. And I agree with my colleague here that the text of the statute is clear. It is unambiguous because it refers to regional centers that have been designated by the Secretary of Homeland Security, that's subsection E1. It doesn't say designated by the Secretary of Homeland Security after March of 2022 or before March of 2022. It's backward looking and it is without limitation. And so designated under subparagraph E simply means regional centers that have been designated to participate in the program, whether that was in 2014 when Sunshine State was designated or whether that was yesterday. It does not have limitation. And so Sunshine State attempts to use different provisions of the Reform and Integrity Act to somehow argue that they are not required to pay this fee. And so because their argument hinges on the phrase designated under subparagraph E, I will turn your honors attention to subparagraph G of the law. And subparagraph G involves the annual reporting requirement for all regional centers. And so that reporting requirement is comprehensive. And once again, just like the integrity fund fee, it goes directly to Congress's intent of the program to ensure compliance and to curb fraud and abuse. Subparagraph G uses the phrase regional center designated under subparagraph E. And so under Sunshine State's interpretation, they shouldn't be required to file the annual report either because they don't believe that they're required to since they contend that they are not a regional center designated under subparagraph E. Now, I'll note that the reporting requirements involve submitting information about bona fides of the people involved in the regional center program concerning compliance with securities laws, information regarding third party promoters, all integrity measures that the agency needs to confirm are being abided by. And so under Sunshine State's interpretation, they should not be required to file that annual statement either. And once again, that is not the best interpretation of the statute. That cannot be what Congress intended when it sought to overhaul and reform the program in order to prevent the fraud and abuse that ran rampant for decades under the old program. I'll also briefly touch on the Bering decision, and your honors did discuss that with my colleague and. An important part of the Bering decision was the court's indication that the agency may do what is reasonably necessary to ensure that all regional centers come into compliance with the integrity measures of the Reform and Integrity Act. And so the integrity fund fee being a huge provision within the RIA that will bring regional centers into compliance with the new requirements. Furthermore, to the extent that Sunshine State argues that USCIS is somehow retroactively applying the Reform and Integrity Act, I'll just briefly note that the argument does not have any merit because, to put it in simple terms, USCIS is not levying the fee retroactively in the sense that because Sunshine State has been designated to participate in the regional center program since 2014, USCIS is not just applying it prospectively going forward to the extent that the regional center wants to continue as a designated center. Right. They're not saying you have to pay 11 years worth of fees because you were designated, you know, that many years before the program or the Reform and Integrity Act was enacted or etc. etc. So this is a prospective fee that is assessed to address fraud in the program as reauthorized by Congress. Finally, I'll note that Sunshine State continues to press that it was designated under the 1992 Appropriations Act, not designated under subparagraph E. But as your honors noted, the 1992 Appropriations Act and Section 610A through which Sunshine State obtained their designation was repealed. So at this juncture, there is no law that authorizes a regional center program aside from the regional center program under subparagraph E of the Reform and Integrity Act. So while it may be true that Sunshine State was originally designated under the 1992 Act, it is now authorized to participate under the Reform and Integrity Act under subparagraph E. The agency's interpretation of the law as applicable to all regional centers, regardless of their time of designation, is the best interpretation of the statute based on the text, structure, and purpose of the law as enacted by Congress. And if there are no further questions from your honors, we would respectfully request that this court affirm the district court's decision. All right. Thank you, Ms. Faso. And we'll hear again from Sunshine State. Can I ask you a favor, just as part of your presentation, would you address Ms. Faso's argument about subparagraph G? Is it in fact your position that you don't have to file the annual statements as well? The text of, yes, your honor, that is our position, that it doesn't apply, because... And so let me ask you this, because so where she picked up is she said their position is they don't have under subparagraph G because it contains the same limiting language, they don't have to file the annual statements, and that's weird. And you say, yes, that is our position. But I actually think there's like one step further in her argument, which is that subparagraph I, it seems to me, clearly contemplates that you will file these annual statements. Yes, your honor, I want to address both questions. So which is it? Yeah, I want to address both questions. So the conversation about 53G is weird because it's a half truth. Regulation HCFR 204.5M requires my client to file a thing called a 924A, which is an annual report. And so this is a previous mechanism used to get the same information from my client. I'm not sure why the government won't be fully honest with this court, but that's the answer to that. Well, in fairness, so maybe you're getting there. But I says that a regional center, not a regional center designated under subparagraph E, but a regional center shall annually reissue a certification in accordance with subparagraph G, not some CFR something or other. That's right, your honor. And if we look at the exact language of this, I think this answers Judge Marcus's question, too. You're reading 1153B5II, two II's and then big two II's. Got it. It says a regional center shall annually reissue a certification described in subclause I. If we look at subclause I, that certification is necessary so the Secretary of Homeland Security may approve a new application to be engaged in regional center designation. This is for new RIA regional centers. This doesn't apply at all to legacy regional centers because nothing in the RIA requires my client to get re-designated. So this is a proposed counsel that if Congress really wanted to distinguish between legacy regional centers and new ones, they would have done so. They did, your honor, through traditional tools of statutory interpretation. We should not assume this is, quote, loose. Well, the reason I say it is they don't use the most obvious linguistic tools that they might have otherwise used to distinguish. I mean, you use the term, and I think it's a good term, legacy regional centers. They could easily have referred to one class as being legacy and another class as being new. We're not just regional centers. They don't do that. And I think the way they did that, your honor, is saying regional centers that are designated under this law. This is how the industry understands it, your honor. This is the language the industry uses, which Congress is charged with knowledge of. This idea that Bering somehow gave the agency the ability to do anything necessary to bring regional centers into compliance, the RIA, is Bering begging them to engage in rulemaking. When we have statutes that are loosely drafted, the agency's designated authority to come in and engage in notice and comment rulemaking. They haven't done so. The agency continues to fight in the District of Columbia their right to not engage in rule, notice and comment rulemaking. If they engage in notice and comment rulemaking, this would not, we would not be here. They may be able to charge this fee to legacy regional centers. We would actually be here. And I'll tell you why we would be here, because you would then say under Loeb or Bright, the statute is clear because that's what you're arguing today. Right. And so we don't get to the agency, the agency's ability to make rules on this. Well, your honor, I think that we would have a record in front of us. Instead, right now we're dealing with an Acardi doctrine violation where they did a notice and they provided no rationale for this interpretation of the statute, which I think this entire discussion today indicates. But if the interpretation of the statute is, you know, as a matter of law, correct, then it doesn't really matter what their interpretation of the statute is. I mean, you're making that argument. You're just saying it means something different than what they're saying. I misspoke. It's not an Acardi doctrine violation. It's a chainery doctrine. They are everything my colleague just got up here and said is nowhere in the notice that it did this interpretation. And that is a blatant chainery doctrine violation. So if they engage in notice and comment rulemaking, your honor, we would use again. But again, if you're right, and the statute can mean only one thing, and it can mean only what you're saying that it means. I mean, the rulemaking doesn't matter, right? Because if the rulemaking came out the way that that they're arguing today, you would just argue their rulemaking doesn't matter under Loeb or Bright because the statute is clear, right? I don't think that's right, your honor, because I don't know what they would say. I do not know their argument. They have not put it to the public in the Federal Register. They have not put it to this court through a record. There's no record in this case. And this is an APA review case. That is strange. And for that reason, your honor, we do believe we have the best holistic reading of the statute. And this court should. The Supreme Court in the case called Patel that came out of this circuit in the last paragraph said it is not the court's province to engage in policy debates. It is to enforce the plain language of the statute. And that's what we ask this court to do. Thank you. All right. Thank you, counsel.